IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| KEVIN FOY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-17-2743 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
|     Acting Commissioner, | ) | |
|     Social Security Administration | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Kevin Foy ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 13) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 14). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **REVERSES** and **REMANDS** the matter for further clarification.

I.     **Procedural Background**

On March 19, 2016, Plaintiff filed for DIB under Title II of the Social Security Act. R. 15. Plaintiff alleged disability due to shoulder injury, arthritis, type 2 diabetes, depression, erectile dysfunction, lumbosacral cervical strain, pituitary gland tumor, carpal tunnel syndrome, and

1

sleep apnea. R. 84. An administrative hearing was held on December 6, 2016, and on March 30, 2017, the claim was denied. R. 33-70, 15. Plaintiff sought review by the Appeals Council, which concluded on July 19, 2017, that there was no basis for granting the Request for Review. R. 1.

**II.     Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x, at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d, at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' "). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Court shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 17-26. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity

4

since November 6, 2015, the alleged onset date. R. 17. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff had the following severe impairments: carpal tunnel syndrome, diabetes mellitus, obesity, lumbago, anxiety disorder, mood disorder, and depression. *Id.* The ALJ stated that the listed impairments were severe because they were "all medically determinable, have lasted or can be expected to last more than twelve months, and cause more than a minimal limitation in the claimant's ability to perform work-related activities." *Id.* In step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. R. 18. At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except Plaintiff

> can occasionally push or pull with the right upper extremity . . . can occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally kneel; occasionally crouch; and occasionally crawl . . . can occasionally overhead reach with the right upper extremity . . . can occasionally handle and finger objects with the upper right extremity . . . [and] is limited to simple, routine, and repetitive tasks.

R. 20-21. The ALJ then determined that Plaintiff was not capable of performing any of his past relevant work as a janitor, security guard, security inspector, and youth supervisor. R. 25. At step five, however, the ALJ concluded that there are jobs that exist in the national economy that accommodate Plaintiff's known limitations, and accordingly concluded that Plaintiff was not disabled within the meaning of the Social Security Act. R. 25-26.

On appeal, Plaintiff requests that the Court grant summary judgment in his favor or, in the alternative, remand this matter to the Social Security Administration for a new administrative hearing. For the reasons set forth below, the Court reverses and remands the ALJ's decision.

### A. The ALJ did not fail to consider Plaintiff's hearing loss, tinnitus, and right shoulder impairment.

Plaintiff alleges that the ALJ failed to consider all of Plaintiff's impairments. Pl.'s Mot. 12. Specifically, Plaintiff argues that, at steps two and four of the sequential evaluation process, the ALJ "ignored" Plaintiff's hearing loss and "brushed off the [Plaintiff's] shoulder impairment." *Id.*

1. The ALJ's failure to consider Plaintiff's hearing loss, tinnitus, and shoulder injury at step two of the sequential evaluation process constitutes harmless error.

At step two of the ALJ's sequential evaluation process, the ALJ must determine whether a claimant has a "severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the ALJ finds one or more severe impairments or combinations of impairments, the evaluation proceeds to the next step in the evaluation process.

In the instant case, because the ALJ found that Plaintiff suffered from other impairments besides his hearing loss and shoulder injury that satisfied the severity criteria of step two, any error in the ALJ's evaluation of Plaintiff's hearing loss or shoulder injury at step two was harmless. *See, e.g.*, *Stitely v. Comm'r, SSA*, No. SAG-14-144, 2014 WL 5834700, at *4 (D. Md. Nov. 10, 2014) (finding that the ALJ's evaluation which failed to consider certain impairments did not constitute reversible error due to step two being satisfied by other impairments).

2. The ALJ did not err by failing to consider Plaintiff's hearing loss and tinnitus at step four of the sequential evaluation process.

At step four of the evaluation process, the ALJ must consider all alleged impairments in assessing a claimant's RFC, "without regard to whether any such impairment, if considered

separately, would be of sufficient severity [to satisfy step two]." *Id*. § 404.1523(c). However, this Court has held that "an ALJ obviously need not explicitly perform a detailed analysis of every condition a person has ever had." *Reynolds v. Astrue*, No. SKG-11-559, 2012 WL 1107649, at *15 (D. Md. Mar. 30, 2012). In addition, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted). In determining whether the ALJ should have considered evidence of an impairment, this Court looks to several factors: whether the claimant indicated that the impairment limited his ability to work on his disability application and at his administrative hearing, whether the claimant consistently and frequently complained about the impairment to his doctors, as well as when any complaints occurred relative to the alleged onset date. *See, e.g.*, *Meyer v. Colvin,* 754 F.3d 251, 257 (4th Cir. 2014) (citation omitted) ("an ALJ is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability."); *see also Reynolds*, 2012 WL 1107649, at *15-16 (finding that remand was appropriate where plaintiff alleged certain impairments in her disability application and at the administrative hearing, as well as sufficient evidence in the medical records, and the ALJ failed to adequately address said impairments); *Corcoran v. Astrue*, No. SKG-08-913, 2009 WL 3100350, at *19 (D. Md. Sep. 22, 2009) (holding that the ALJ's failure to consider plaintiff's knee injury was harmless error where plaintiff never alleged it would limit her ability to do work in either her disability application or follow-up papers submitted to the Administration).

    In the instant case, Plaintiff indicated in his disability application that his hearing loss and tinnitus limited his ability to work. R. 214-15. On January 29, 2015, Plaintiff complained to an audiologist that his hearing loss required him to move closer to someone who is speaking to him

in order to hear and that his tinnitus makes it difficult to concentrate on someone speaking to him. R. 866, 869. However, Plaintiff is unable to point to, nor is the Court able to locate, any subsequent evidence that his hearing loss or tinnitus bothered him even slightly—let alone limited his ability to work—despite Plaintiff's numerous and frequent visits to various medical professionals. Moreover, at the administrative hearing, Plaintiff failed to mention suffering from either hearing loss or tinnitus. Notably, when the ALJ asked Plaintiff, "as far as the conditions that would affect your ability to work, [the right hand impairment, mood disorder, sleep apnea, and right knee] - - those are the ones that you're thinking are severe?" R. 48. Plaintiff responded twice by stating "Absolutely." *Id*. Plaintiff's attorney likewise never asked Plaintiff about his hearing loss or tinnitus during counsel's examination of Plaintiff. R. 62-66. Even after the ALJ agreed at the hearing to allow the record to remain open for two weeks, Plaintiff produced no additional evidence mentioning his hearing loss or tinnitus. R. 38, 2410-2509. Therefore, the Court does not find that the ALJ's failure to discuss Plaintiff's hearing loss and tinnitus constitutes reversible error.

       3. The ALJ did not fail to properly consider Plaintiff's shoulder impairment at step four of the sequential evaluation process.

Plaintiff argues that the ALJ did not properly consider Plaintiff's shoulder impairment because the ALJ did not discuss pertinent medical evidence. Pl.'s Mot. 13. Plaintiff specifically refers to VA records stating that the shoulder impairment was a historical problem and was getting "progressively worse," as well as records mentioning that the impairment caused motion limitations and chronic pain. *Id*. While these pieces of evidence may be construed as support for Plaintiff's viewpoint, this Court's role is not to reweigh the evidence, and the Court must accept the ALJ's factual findings if they are supported by substantial evidence. *Hays*, 907 F.2d at 1456 (citations omitted). In the instant case, the ALJ's finding that Plaintiff's shoulder impairment

8

"does not impact the claimant's ability to perform occupational tasks," is supported by substantial evidence. R. 23. The ALJ specifically noted that Plaintiff's claims of shoulder limitations were not fully supported because his "muscle strength testing was 5/5 bilaterally and his examination revealed no functional impairment." *Id*. (citing to Exh. 6F; ECF No. 10-10, pp. 532, 544, 546). The ALJ also cited a note from Plaintiff's occupational therapist that Plaintiff reported having decreased pain in his right upper extremity. *Id*. (citing to Exh. 6F; ECF No. 10-10, p. 200). Thus, the ALJ's evaluation of Plaintiff's shoulder impairment was not improper because it is supported by substantial evidence.

### B. The ALJ failed to consider the holding of Mascio in the RFC determination.

Plaintiff argues that under the *Mascio* decision, the ALJ's RFC assessment limiting Plaintiff to "simple, routine, and repetitive tasks" did not account for the moderate limitations in concentration, persistence, and pace the ALJ found him to have at step three of the sequential evaluation. Pl.'s Mot. 14 (citing R. 20-21). Under *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, and pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). In the instant case, the ALJ's RFC assessment failed to include any mental limitations that corresponds with the ALJ's finding at step three that Plaintiff has moderate limitations in concentration, persistence, or pace. Accordingly, under *Mascio*, the ALJ's failure to provide an

explanation for why Plaintiff's moderate difficulties in concentration, persistence, and pace did not translate into a limitation in his RFC constitutes reversible error. Commissioner contends that the ALJ's reference to Plaintiff's ability to attend college classes, stay on track to graduate, and daily activities of visiting his mother and helping around the house constitute adequate support for the ALJ's conclusions. However, the issue is "not whether the record contains evidence that might support the ALJ's conclusions; it is whether the ALJ explained the apparent discrepancy between [his] step three finding and [his] RFC assessment." *Id*. The ALJ did not connect any of the evidence cited by Commissioner to this discrepancy, and the Court is unwilling to infer such a connection. Therefore, the Court remands this case with specific instructions for the ALJ to include an RFC limitation for Plaintiff's difficulties with concentration, persistence and pace, or explain why such a limitation is not warranted.

### C. *The ALJ did not fail to properly evaluate Plaintiff's obesity.*

Plaintiff alleges that the ALJ failed to properly evaluate Plaintiff's obesity, specifically arguing that the ALJ failed to consider Plaintiff's obesity in conjunction with his other impairments at steps two through four of the evaluation process. Pl.'s Mot. 14-15. The regulations require the ALJ to consider the additional and cumulative effects of a claimant's obesity throughout the evaluative process. SSR 02-1p, 2002 WL 34686281, at *3-7 (Sept. 12, 2002). At step three, the ALJ must consider whether obesity may exacerbate coexisting and related impairments to the degree that in combination they meet a listing. *Id*. at *3. At steps four and five, obesity may diminish residual functional capacity by limiting a claimant's ability to perform routine movements or engage in physical activity in the workplace. *Id*. at *6. The Social Security Administration has identified musculoskeletal, cardiovascular and respiratory impairments as conditions especially likely to be exacerbated by obesity. *Id*. at *1, 5-

10

6. However, the Commissioner does not presume that obesity has such deleterious effects, but rather looks to the record as a whole to ascertain its impact on the claimant. *Id*. at *6. At steps two through four, the burden remains on claimants to show how obesity imposes limitations beyond those caused by other impairments. *See, e.g.*, *George v. Astrue,* No. 10-2165, 2013 WL 877120, at *2 (D. Md. Mar. 7, 2013) (noting that "nowehere does [plaintiff] attempt to satisfy her burden of demonstrating how her obesity affects her ability to affect work-related activity."); *Dunn v. Comm'r, Soc. Sec. Admin.,* No. 11-2217, 2013 WL 822383, at *3 (D. Md. Mar. 4, 2013) ("The claimant carries the burden of showing how her obesity affected her ability to perform work-related functions."). The ALJ is not required to engage in conjecture or assumptions about the effect of a claimant's obesity. *See* SSR 02-1p, 2002 WL 34686281, at *6.

In the instant case, the ALJ found that Plaintiff's obesity was a severe impairment at step two of the evaluation process. R. 17. At step four, the ALJ noted that "treatment notes do not reflect that claimant has any significant, specific limitations resulting from his weight," and that any limitations from Plaintiff's obesity "are accounted for in finding that the claimant has the residual functional capacity to do no more than light work." R. 22-23. Nonetheless, Plaintiff argues that "the ALJ never discusses obesity or specifies what limitations may result from such condition, or how [Plaintiff's] obesity impacts his other physical and mental limitations such as his degenerative disease in his right knee, lumbago, depression and sleep apnea." Pl.'s Mot. 15. However, Plaintiff has not cited, and the Court is unable to locate, evidence of record that Plaintiff's obesity affected his ability to perform work-related activities in any way—either alone or in conjunction with Plaintiff's other impairments, including those mentioned by Plaintiff. Plaintiff has not met his burden at steps two through four of the evaluation process to show that

11

his obesity adversely affected his ability to work. Therefore, the Court finds that the ALJ did not fail to properly evaluate Plaintiff's obesity.

### D. *The ALJ did not err in failing to add a limitation in his RFC regarding Plaintiff's interaction with the public.*

Plaintiff alleges that the ALJ erred by failing to incorporate an RFC limitation on Plaintiff's ability to interact with the public. Plaintiff specifically argues that "[i]t is unclear how the ALJ has concluded that [Plaintiff] has no limitations when being around people or no limitation for a small group of people," in light of the fact that "[Plaintiff] has PTSD symptoms from his time in the armed forces . . . avoids grocery stores [and] malls . . . and explained that he can deal with small group settings but not larger groups of people." Pl.'s Mot. 17. While these pieces of evidence may be construed as support for Plaintiff's viewpoint, this Court's role is not to reweigh the evidence, and the Court must accept the ALJ's factual findings if they are supported by substantial evidence. *Hays*, 907 F.2d at 1456 (citations omitted). In the instant case, the ALJ's finding that Plaintiff's RFC did not require a limitation on his interaction with the public is supported by substantial evidence. The ALJ noted that Plaintiff's claims of having "difficulty engaging in social activities, getting along with others and spending time in crowds" were undermined by Plaintiff's own testimony that he was "able to get along with others like his wife, spend time with friends and family which includes frequent visits with his mother [and] deal appropriately with authority." R. 19. The ALJ also cited medical evidence showing "that the claimant had a good rapport with providers, was described as pleasant and cooperative, and had positive interactions with non-medical staff." R. 20 (citing Exhs. 2F, 3F, 4F, 6F, and 8F). Thus, the ALJ's decision to not include a public interaction limitation on Plaintiff's RFC is supported by substantial evidence.

### *E. The ALJ did not improperly utilize rulings that were rescinded prior to his decision*

Plaintiff alleges that in adjudicating Plaintiff's claim, the ALJ improperly utilized rulings that were rescinded prior to his decision. Pl.'s Mot. 17. Specifically, Plaintiff asserts the ALJ "utilized an improperly [sic] legal standard" by using four Social Security Rulings—SSR 96-2p, 1996 WL 374188 (July 2, 1996), SSR 96-5p, 1996 WL 374183 (July 2, 1996), and SSR 06-03p, 2006 WL 2329939, (Aug. 9, 2006)—that were rescinded on March 27, 2017, to deny Plaintiff's claims. Pl.'s Mot. 17; *see* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017); *see also* SSR 17-2p, 2017 WL 3928306, at *1, 5 (Mar. 27, 2017) (rescinding and replacing SSR 96-6p, 1996 WL 374188). Plaintiff errs in asserting it was improper for the ALJ to use these rulings for his decision.

While Social Security Rulings 96-2, 96-5, and 06-03 were rescinded on March 27, 2017, their rescission was only "effective for claims filed on or after March 27, 2017." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, 82 Fed. Reg. 15263-01. In addition, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), requires adjudicators to use Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p "[f]or claim(s) filed before March 27, 2017." HALLEX I-5-3-30, 2017 WL 1362776, at *5 (2017). Because Plaintiff's claim was filed on March 19, 2016, prior to the March 27, 2017 deadline, Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p were still in effect at the time of the ALJ's decision and thus the ALJ did not err by using them.

**IV. Conclusion**

Based on the foregoing, the Court **REVERSES** and **REMANDS** with specific instructions for the ALJ to include an RFC limitation for Plaintiff's difficulties with concentration, persistence and pace, or to explain why such a limitation is not warranted.


August 3, 2018 /s/
Charles B. Day
United States Magistrate Judge


CBD/gbc/mag